# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
July 6, 2017

*In re* HAMMINGA/LONG, Minors.

Nos. 334147; 334148
St. Joseph Circuit Court
Family Division
LC No. 06-001205-NA

Before: TALBOT, C.J., and BECKERING and M.J. KELLY, JJ.

PER CURIAM.

Respondents are the biological mother of MH and JL, and the biological father of JL. Respondent mother appeals as of right the trial court order terminating her parental rights to the minor children MH and JL under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (j) (child will be harmed if returned to parent). Respondent father appeals as of right the trial court order terminating his parental rights to JL under MCL 712A.19b(3)(a)(*ii*) (abandonment), (g), and (j). We affirm.

Petitioner, the Department of Health and Human Services (DHHS) removed MH from mother's care in 2006 due to mother's methamphetamine use and domestic violence between mother and her boyfriend, respondent father, and returned her to mother's care in 2008.[1] The DHHS removed MH and JL from respondents' care in 2010 due to mother's methamphetamine use and father's use of the residence as a methamphetamine laboratory, and returned them to mother's care in 2011. The trial court assumed jurisdiction over the minor children again in August 2015, after the DHHS filed a petition on August 17, 2015, alleging that mother and her friends smoked methamphetamine in mother's residence. Mother's friends tested positive for methamphetamine, but mother refused to take a drug screen. When contacted by the DHHS, father refused to cooperate.

From August 2015 to May 2016, mother generally cooperated with the DHHS and completed all requested services. She maintained employment and acted appropriately with the children during parenting time. However, mother tested positive for methamphetamine once in

---

[1] The agency involved in these actions was the Department of Human Services (DHS). In April 2015, the DHS merged with the Department of Community Health (DCH) to form the DHHS. To avoid confusion, we will refer to actions taken by the DHS as taken by the DHHS.

January 2016, twice in March 2016, and once in May 2016. Mother also initially lied to the DHHS concerning her March and May positive results. Father exercised parenting time with JL once in October 2015, subsequently ending all contact with the DHHS and JL. Father was incarcerated in Indiana in March 2016. On March 31, 2016, the DHHS filed a petition seeking termination of respondents' parental rights to the minor children.

Following a May 31, 2016 hearing on the petition, during which the trial court found that clear and convincing evidence established the statutory grounds for the termination of respondents' parental rights and that termination was in the children's best interests, the trial court entered an order terminating respondents' parental rights. Delivering its ruling from the bench, the trial court summarized the main issue in this case as follows:

> This case really, really bothers me, because this is the third time around, and always it had to do with methamphetamine. That's the connective trail throughout all three of these cases. Three times with [MH] and two times with [JL].
>
> These children have been removed, mother has gotten her act back together enough that we've returned the children, to have mother again go back to methamphetamines, which lead also to the domestic violence and being around inappropriate people that cause all kinds of damage to the children, particularly MH because she's older.
>
> The damage that's been done to [MH] is really exemplified in–in two things here in particular. One is the psychological evaluation of Doctor Haugen, and the other one, which is really graphic . . . is the song that [MH] wrote. And it wasn't in therapy, as her counselor had said. And I'll quote the same part that the Lawyer Guardian Ad Litem [sic]:

> "My life started bad
> Yes, it's kind of sad
> My mom had chose drugs
> Which makes me really mad
> She chose them over me
> And took my brother's pee
> It made me feel scared
> And my brother was feared
> She was never home
> And never left a phone
> She would always lie
> And tell us to go die
> Whenever she was high."

And on it goes.

On appeal, mother argues that the trial court erred when it found that clear and convincing evidence supported termination of her parental rights under MCL 712A.19b(3)(g) and (j). We disagree.

To terminate parental rights, the trial court must find that one of the statutory grounds for termination set forth in MCL 712A.19b(3) has been established by clear and convincing evidence. *In re McIntyre*, 192 Mich App 47, 50; 480 NW2d 293 (1991). Once the trial court finds grounds for termination and finds by a preponderance of the evidence that termination is in the best interests of the child, the trial court must order termination of parental rights. MCL 712A.19b(5). This Court reviews the trial court's decision to terminate parental rights for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A finding is "clearly erroneous where the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Terry*, 240 Mich App 14, 22; 610 NW2d 563 (2000).

Termination under MCL 712A.19b(3)(g) is proper when "[t]he parent, without regard to intent, fails to provide proper care and custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

The trial court did not err in finding grounds to terminate mother's parental rights pursuant to MCL 712A.19b(3)(g). She initially failed to provide proper care for the minor children by using methamphetamine and allowing others using methamphetamine to reside in her home. When she was using methamphetamine, mother failed to provide food for the minor children, and she hoarded urine from JL to use for drug screens. Because mother was unable to care for the children, MH attempted to fill the role of caretaker for JL. This role reversal caused MH significant psychological harm, as demonstrated by her diagnosis of Post-Traumatic Stress Disorder (PTSD).

Mother argues on appeal that her newfound commitment to services and ability to maintain sobriety at the outset of the case—from August 2015 to January 2016—supports the conclusion that she will be able to provide proper care and custody to the children. However, mother must demonstrate not only that she complied with the service plan, but that she *benefited* from it. *In re White*, 303 Mich App at 710. The record indicates that mother did not benefit from services because she continued to use methamphetamine. Mother received services from December 2006 to January 2008, March 2010 to March 2011, and August 2015 to May 2016. Despite *years* of services concerning her methamphetamine use and parenting skills, mother continued to use methamphetamine. Mother tested positive for methamphetamine in January 2016, March 2016, and May 2016, with the last positive test occurring 22 days before the termination hearing. Mother chose to use methamphetamine repeatedly, despite knowing that it constituted a violation of her service plan and harmed her children. She also chose to use methamphetamine after reading the song written by MH that was referenced by the trial court, which described MH's sadness about mother choosing drugs over her children. Mother also lied to her caseworker concerning her March 2016 and May 2016 positive drug screens. Further, mother avoided her scheduled therapy and failed to seek additional treatment in May 2016, despite her relapse.

Although mother was able to maintain sobriety from August 2015 to January 2016, the evidence demonstrates that mother was not, in fact, capable of maintaining sobriety long-term. The concerns expressed at the termination hearing included that mother had been able to achieve sobriety temporarily in earlier proceedings, only to return to methamphetamine once the DHHS returned her children to her care. Therefore, mother's brief sobriety in the current proceedings did not demonstrate that she will be able to provide proper care and custody to the children. Additionally, both the caseworker and MH's therapist testified to their belief that the children would be at risk of harm if returned to mother. Considering mother's failure to succeed after multiple removals and years of services, the identification of mother's substance abuse as a long-term issue in mother's psychological evaluation, and the children's ages and need for stability, the trial court did not clearly err in finding that mother would be unable to provide proper care and custody within a reasonable time. Because the trial court did not clearly err in finding one statutory ground for termination, we need not consider the additional statutory ground on which the trial court based its decision. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

To the extent that mother argues that the trial court erred in its findings because the DHHS did not give her the opportunity to participate in conjoint therapy with MH as recommended by MH's psychological evaluation, we find this argument unpersuasive. The DHHS is required to offer reasonable services; it has no duty to provide every conceivable service. *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008); MCL 712A.18f(4). It certainly has no duty to provide a service conditioned on a parent's progress in addressing her substance abuse issues and a child's progress in counseling therapy at a time when neither parent nor child satisfactorily meets those conditions. The recommendation for conjoint therapy with MH was conditioned on MH's progress in therapy and mother's progress with her substance abuse issues. Mother did not progress, as demonstrated by her positive drug screens in January 2016, March 2016, and May 2016, and in the opinion of MH's therapist, conjoint therapy would have been harmful to MH.

Although father does not challenge the trial court's finding of statutory grounds to terminate, we note that such challenge would be unavailing. Father ceased cooperating with the DHHS in October 2015, did not comply with the service plan, and demonstrated no ability to provide proper care and safety to JL. This is sufficient to support the trial court's finding that statutory grounds existed for termination under MCL 712A.19b(3)(g). *In re White*, 303 Mich App at 710 ("A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody."). As we noted with regard to mother, because the trial court did not clearly err in finding one statutory ground for termination, we need not address the additional statutory ground on which the trial court based its decision. *In re HRC*, 286 Mich App at 461.

Respondents also argue that, even if statutory grounds for termination exist, the trial court erred when it found that termination was in the minor children's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court may consider the record as a whole in determining whether termination is in the child's best interests. *In re Trejo*, 462 Mich at 354. The trial court must "state on the record or in writing its findings of fact

-4-

and conclusions of law with respect to whether or not parental rights should be terminated." MCL 712A.19b(1). When deciding whether termination is in the child's best interests, the trial court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). It is also proper to consider evidence concerning the length of time the child has been in foster care and whether the child could be returned to the parent "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). Although the parent's interests may be considered, "[t]he primary beneficiary" of the best-interest determination "is intended to be the child." *In re Trejo*, 462 Mich at 356.

To the extent respondents argue that the trial court should have to find by clear and convincing evidence that termination of parental rights is in the children's best interests, we note that, in *In re Moss*, 301 Mich App 76, 84-90; 836 NW2d 182 (2013), we determined that the Legislature's failure to define a standard of proof in MCL 712A.19b(5) indicated that a standard of proof of a preponderance of the evidence should be used. We further determined that a preponderance of the evidence standard of proof could be constitutionally applied to the best-interest determination. *Id.* Respondents argue that *In re Moss* was inconsistent with *In re Trejo*'s "clear evidence" standard for the best-interest determination. However, as explained in *In re Moss*, MCL 712A.19b(5) was amended after the *In re Trejo* decision and the word "clearly" was removed from the statute. *Id.* at 83. Accordingly, respondents have failed to demonstrate that *In re Moss* was wrongly decided.

As to the best-interest determination in the present case, the record establishes that the minor children were removed in August 2015. Mother never exercised unsupervised parenting time as to either child. Mother exercised supervised parenting time approximately once a week when it was not suspended due to methamphetamine use. Father exercised parenting time only once in October 2015.

Any bond that may have existed between parents and the children was strained by respondents' methamphetamine use and father's absence. MH's bond with mother also suffered due to MH's multiple removals from mother. MH indicated an awareness that mother consistently chose methamphetamine over her children. She also expressed disappointment and anger when mother's parenting time was suspended due to methamphetamine use. JL did not appear to have any bond with mother at parenting time. Other than a brief period of contact in 2015, JL had no contact and no relationship with father. Accordingly, very little bond existed between MH and mother, and JL and respondents.

The children were in care for nine months. During this time, mother demonstrated an inability to benefit from services offered. Father demonstrated an unwillingness to cooperate with the DHHS or to attend services. Accordingly, it was "unlikely that the child[ren] could be returned to [their] parents' home within the foreseeable future," and termination of respondents' parental rights was proper to facilitate a permanent, safe future for the children. *In re Frey*, 297 Mich App 248-249. Although mother argues on appeal that she demonstrated an improvement in her ability to maintain sobriety, the children cannot be expected to wait indefinitely for mother's uncertain improvement and, in doing so, forgo a safe and stable home. Accordingly, the evidence established that termination of mother's parental rights was in the children's best

interests. The evidence also established that termination of father's parental rights was in JL's best interests.

Respondents argue that the trial court failed to properly consider the children's placements with relatives when making this best-interest determination. MH was placed with her biological father, and JL was placed with his paternal aunt. "[T]he fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interest." *In re Olive/Metts Minors*, 297 Mich App at 43. The trial court appropriately considered the minor children's relative placement. The trial court reviewed the custody order placing MH with her father and JL's paternal aunt's testimony. It opined that the minor children were in need of stability and permanency, and found that MH had found the stability and permanence she needed in her father's home and that JL had found the stability and permanence he needed in his paternal aunt's home. The trial court also referenced the children's placements in its discussion regarding potential adoption. Accordingly, respondents have not demonstrated error sufficient to merit remand to the trial court.

Respondents also argue that the trial court should not have considered the potential for adoption of MH and JL because they were in relative placements. The assumption underlying respondents' argument is that, because the aim of adoption is stability, and placement with a relative provides more stability than placement in a foster home, the possibility of adoption should not weigh in favor of termination when placement is with relatives because the placement provides stability. Respondents provide no authority supporting this assertion. Further, relative placement alone is not necessarily a permanent solution. Like foster-care placement, placement with a relative can be temporary. Considering the likelihood of adoption, whether by a foster parent or a relative, allows the trial court to determine whether a child will find a stable, permanent home once parental rights are terminated.

We conclude that the trial court did not err in terminating respondents' parental rights.

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael J. Kelly